Richard A. ADAMS,

v.

Harry E. MARTYN, III, individually, and doing business as Harry E. Martyn, III, & Associates.

Civ. A. No. 85–3893.

United States District Court, E.D. Pennsylvania.

June 17, 1986.

Frank A. Baker III, Bethlehem, Pa., for plaintiff.

Frank A. Luchak, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Defendant Harry E. Martyn, III, has moved for summary judgment in this securities fraud case on the ground that plaintiff's federal claims are barred by the applicable statutes of limitations. I agree with Martyn, and will grant the motion. I will also dismiss the remaining pendent state law claims because of lack of subject matter jurisdiction.

## I. FACTS

In December 1981, plaintiff Richard A. Adams purchased a tax shelter investment from Martyn for $5,000. At that time, Adams, the Superintendent of Human Resources for the Bethlehem Steel Corporation, earned about $75,000 annually. On his 1981 federal tax return, Adams declared a $25,000 business loss for "mining development expense" associated with the tax shelter. In 1983, the Internal Revenue Service (IRS) disallowed the tax shelter deduction, and assessed a tax deficiency of approximately $8,500 against Adams.

From July 1983 to July 1984, Adams received at least five notices from the IRS concerning this tax deficiency—including a 90–day letter in October 1983. But he took no action in response to these letters until July 1984. According to Adams, he ignored the deficiency notices for a year on Martyn's advice:

> Martyn ... indicated with me that other people had received 90–day letters and they were ignoring them and that the IRS was giving up on those cases.... He told me that there were many cases adjudicated by the courts in favor of the taxpayers and ... there was some guy in the Philadelphia district who had still not yet gotten the word.... So, that is the reason why we didn't do anything else with respect to these letters.

Adams deposition at 88.

Adams also discussed the notices with his accountant, who told him that there might be a problem with the tax shelter deduction. Finally, in July 1984, Adams contacted an attorney, who informed him that he was "in big trouble," having ignored the IRS notices and the 90–day letter. Adams eventually settled the deficiency dispute with the IRS, which collected the amount due. Then, on July 5, 1985, Adams filed this suit, alleging violations of federal and state securities laws.

## II. DISCUSSION

In count I of his complaint, Adams asserts that Martyn is liable to him under section 12(1) of the Securities Act of 1933 (the 1933 Act), 15 U.S.C. § 77*l*(1). In count II, Adams alleges that Martyn is liable to him under section 12(2) of the 1933 Act, 15 U.S.C. § 77*l*(2). And in count III, Adams claims that Martyn acted in violation of section 10(b) of the Securities Exchange Act of 1934 (the 1934 Act), 15 U.S.C. § 78j. Adams also asserts that Martyn violated rule 10b–5, which is promulgated under section 10(b) of the 1934 Act. In his motion for summary judgment, Martyn maintains that all three of these federal claims are time-barred by the applicable statutes of limitations.

In ruling on this motion for summary judgment, I must resolve all inferences to be drawn from the facts in favor of plaintiff, the non-moving party. *Continental Insurance Co. v. Bodie,* 682 F.2d 436, 438 (3d Cir.1982). And I may grant summary judgment here only if it is established that there is no genuine issue as to any material fact and that defendant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Small v. Seldows Stationery,* 617 F.2d 992, 994 (3d Cir.1980).

### A. *1933 Act Claims*

█ Both parties agree that counts I and II are subject to the limitations period set out in section 13 of the 1933 Act:

> No action shall be maintained to enforce any liability ... unless brought within one year after the discovery of the un-

true statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or ... unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability ... more than three years after the security was bona fide offered to the public, or ... more than three years after the sale.

15 U.S.C. § 77m. There is also no question that Martyn sold the tax shelter to Adams more than three years before this suit was brought. Martyn contends that the second sentence of section 77m—prohibiting any litigation more than three years after sale of a security—clearly precludes this action. I agree.

Adams maintains that the one-year discovery rule mentioned in the first sentence of section 77m is an exception to the three-year limitation, and would permit his suit. But as the statute makes clear, the three-year applies to all actions ("In no event"). Furthermore, federal courts have consistently interpreted this three-year limitation as an absolute rule not subject to tolling. *Securities and Exchange Commission v. Seaboard Corp.*, 677 F.2d 1301, 1308 (9th Cir.1982); *Antinore v. Alexander & Alexander Services, Inc.*, 597 F.Supp. 1353, 1356 (D.Minn.1984); *Clute v. Davenport Co.*, 584 F.Supp. 1562, 1577 (D.Conn.1984); *Engl v. Berg*, 511 F.Supp. 1146, 1150 (E.D. Pa.1981). I will, therefore, not consider whether equitable tolling might be warranted for these counts, and I will apply the three-year rule of section 77m to bar them.

B. *1934 Act Claims*

Neither section 10(b) of the 1934 Act nor rule 10b–5 contains its own statute of limitations. I, therefore, must look to Pennsylvania law for the appropriate limitations period. *See Biggans v. Bache Halsey Stuart Shields, Inc.*, 638 F.2d 605, 607 (3d Cir.1980). The state regulates the conduct of Martyn, as a seller of securities, through the Pennsylvania Securities Act of 1972, 70 Pa.Cons.Stat.Ann. § 1–101 *et seq.* (Purdon

Supp.1985). This statute, which is analogous to the 1934 Act, sets forth the following statute of limitations:

No action shall be maintained to enforce any liability ... unless brought before the expiration of three years after the act or transaction constituting the violation or the expiration of one year after the plaintiff receives actual notice or upon the exercise of reasonable diligence should have known of the facts constituting the violation, whichever shall first expire.

70 Pa.Cons.Stat.Ann. § 1–504(a).

This statute seems, on its face, to bar Adams' claim which was brought more than three years after the sale of the tax shelter. But while section 1–504(a) gives the limitations period for count III, federal law determines when the period begins to run. *Biggans*, 638 F.2d at 607 n. 3. And under the federal equitable tolling doctrine, "the statute does not begin to run until the plaintiff knew or exercising reasonable diligence should have known of the alleged fraud." *Id.* at 608 n. 3.

Adams asserts that the federal tolling principle applies here, so that the three-year rule does not bar his suit. But even if the limitations period is tolled, Adams' claim may be maintained only if he knew of or should have known of the alleged fraud no later than July 5, 1984—one year before he filed this complaint. *See Alfaro v. E.F. Hutton & Co.*, 606 F.Supp. 1100, 1106 (E.D. Pa.1985). I conclude that Adams had notice of the supposed fraud before July 1984, so I will grant Martyn's motion despite the tolling doctrine.

 As early as October 1983, the IRS first notified Adams about its intention to disallow his tax shelter deduction. Adams, who was earning $75,000 per year and who had other business investments, discussed this letter with his accountant. But rather than take any action about the notice, Adams chose to disregard it in accordance with Martyn's advice. Meanwhile, the IRS notices did not stop coming; they continued, and Adams received a 90–day letter in October 1983. Faced with this severely

worded notice, Adams still ignored the matter. His failure to act—even to inquire of the IRS about the situation—cannot be termed reasonable, especially for a fairly sophisticated businessman. I conclude that Adams should have been alerted about problems with the tax shelter no later than October 1983, when he received the 90–day letter. I further conclude that Adams' reliance on Martyn's advice was unreasonable, given the continuing series of notices sent by the IRS and given his consultations with others, including his accountant.

### III. CONCLUSION

Adams' federal claims, contained in counts I, II, and III of the complaint, are time-barred by the applicable statutes of limitations. In addition, I will dismiss the remaining pendent state law claims for want of federal jurisdiction.